UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| COURTNEY WILLIAM STORK,<br><br>Plaintiff,<br><br>vs.<br><br>SD STATE PRISON, Kellie Wasko S.O.C at Pierre SD, in individual and official capacity; UNKNOWN OFFICERS, C.O. at Mike Durffy State Prison, in individual and official capacity; UNKNOWN OFFICERS, Officer in charge at Mike Durffy State Prison, in individual and official capacity; UNKNOWN NURSE, Nurse at Mike Durffy State Prison, in individual and official capacity; OFFICER AHRONS; OFFICER WARD,<br><br>Defendants. | 4:23-CV-04128-RAL<br><br>OPINION AND ORDER DENYING MOTION TO SUBPOENA AND 1915A SCREENING |

Plaintiff Courtney William Stork, a former inmate at the Yankton Minimum Unit, filed a pro se civil rights lawsuit under 42 U.S.C. § 1983.[1] Doc. 1. This Court granted Stork leave to proceed in forma pauperis, and Stork timely paid his initial filing fee. Doc. 5. Stork filed a motion to subpoena. Doc. 6. This Court now screens Stork's complaint, Doc. 1, and supplement, Doc. 7, under 28 U.S.C. §§ 1915 and 1915A.

---

[1] Stork also alleges that he brings his claims under 28 U.S.C. §§ 2201 and 2202, which authorize federal courts to grant declaratory judgments. Doc. 1 at 6–7. The United States Court of Appeals for the Eighth Circuit has held that 28 U.S.C. §§ 2201 and 2202 do "not create any new substantive right." Reliance Life Ins. Co. v. Burgess, 112 F.2d 234, 238 (8th Cir. 1940). Stork also alleges that he brings claims under 28 U.S.C. § 1331. Doc. 1 at 6–7. "An action under Bivens [or 28 U.S.C. § 1331] is almost identical to an action under section 1983, except that the former is maintained against federal officials while the latter is against state officials." Gordon v. Hansen, 168 F.3d 1109, 1113 (8th Cir. 1999). Stork only names state officials as defendants so he states no Bivens claim triggering jurisdiction under 28 U.S.C. § 1331. Doc. 1. Thus, this Court will analyze Stork's claims under only § 1983.

I.  **1915A Screening**

A.  **Factual Allegations of Stork's Complaint**

On June 19, 2023, Stork returned to the Yankton Minimum Unit (YMU) from his work release program at RTEC in Yankton, South Dakota. Doc. 7 at 18–19. Stork had a body scan and was accused of bringing contraband inside the prison. Id. at 10, 18–19, 27, 29. Officer Ahrons read Stork his Miranda rights. Id. at 1–2, 10, 18–19, 27, 29; Doc. 1 at 2, 6. Stork claims that he was asked to waive his rights, but he declined and asked to call his lawyer. Doc. 1 at 2, 6; Doc. 7 at 1. Ahrons refused Stork's request to call his lawyer and asked Officer-In-Charge Piets to take Stork to his cell. Doc. 1 at 2, 6; Doc. 7 at 10. Stork asked several Correctional Officers (COs) and two Officers In Charge (OICs) to call his lawyer, but his requests were denied. Doc. 1 at 6; Doc. 7 at 2, 19. One CO asked his supervisor if Stork could call his attorney, and Stork's request was denied. Doc. 7 at 2. Stork was informed that he could write to his lawyer. Id. Stork argued that writing to his attorney would breach confidentiality, but writing was the only method allowed. Id. The CO refused to give Stork any paper or a pen upon his request. Id. Stork claims that he repeatedly asked what he did wrong but was never given an answer. Doc. 1 at 6. See also Doc. 7 at 1.

Stork was transferred to the Mike Durfee State Prison (MDSP) in Springfield, South Dakota. Doc. 1 at 6; Doc. 7 at 1, 18. Upon arriving at the MDSP, Stork told Officer Ward that he did not get any supper; Ward said that the kitchen was closed and Stork would have to wait. Doc. 7 at 1. Stork claims that he was put in a dry cell at the MDSP without anything to drink; he was left in handcuffs and belly chains from June 19, 2023, through June 22, 2023. Id. at 1, 24, 27; Doc. 1 at 4, 7. Stork asked two "white shirts" how long he had to be in the dry cell, and he was

2

informed that he had to stay there for seventy-two hours or three bowel movements. Doc. 7 at 1, 19, 24, 27.

The next morning, Stork received his breakfast, but he was left in the handcuffs and belly chains. Id. at 1; Doc. 1 at 5. Stork asked an officer how he was supposed to eat with handcuffs and belly chains, but the officer said, "I don[']t know[,]" and walked away. Doc. 7 at 1. See also Doc. 1 at 5. Stork was unable to eat normally because of the belly chains; he could not reach his mouth with his hands, which he claims was degrading and inhumane. Doc. 1 at 5. The cell did not have a table or place to put his food; Stork "had to place [his] tray on the floor and eat like a dog or cat would eat." Id. See also Doc. 7 at 1, 10, 12, 16, 21–22.

Within the first forty-eight hours, Stork produced five stool samples. Doc. 7 at 1, 19. In total, Stork provided nine stool samples. Id. at 19, 27, 29; Doc. 1 at 4. He had to slide his stool samples through the cell's food port. Doc. 1 at 4; Doc. 7 at 1, 21–22. Stork informed several COs and OICs that toilet paper containing feces would touch the top of the food port. Doc. 1 at 4. He was required to eat food and drink water passed through the same port as his stool samples. Id.; Doc. 7 at 13, 20, 25. He requested for the port to be cleaned or to be able to clean the port himself, but his requests were denied. Doc. 1 at 4. Stork's drinking cup was the height of the food port, and he claims that he could see feces on the drinking cup. Id.; Doc. 7 at 12–13, 20–21, 24–25. He informed the officers about the contamination, but nothing was done. Doc. 1 at 4. Stork claims that he got sick to his stomach with bad pains and diarrhea for three days because of the feces contamination. Id. He alleges that he continues to suffer from post-traumatic stress disorder from these conditions, and he had to be placed on three medications to help cope. Id.

Stork alleges that the handcuffs caused cuts and bruising around his arm. Id. at 7. Ward wrapped gauze around Stork's wrist to prevent injury, but the cuffs still caused cuts and bruising.

3

Id. On June 21, 2023, Stork requested to see the nurse. Id.; Doc. 7 at 2. Stork asked the nurse to cut off the gauze to examine the injury to his wrist and to take a picture of his injury, but the nurse refused and said, "Sorry I can't help you." Doc. 1 at 7. See also Doc. 7 at 2, 10, 12, 21. Stork asked a "white shirt" to loosen the handcuffs, but the "white shirt" said, "it was not going to happen because it was above his pay grade." Doc. 7 at 2.

After Stork produced nine stool samples, he was scanned again and was told he could return to the YMU. Id. at 2–3, 18–19, 27, 29. He asked to see a nurse, but he was told that was not necessary. Id. at 3. Stork was not allowed to shower or brush his teeth while in the dry cell. Id. On June 23, 2023, Stork tried to check on his property. Id. at 6, 9, 17. Stork claims that Unit Manager Tjerdma taunted him and accused him of smuggling contraband. Id. Tjerdma provided Stork toothpaste and a toothbrush and informed Stork that he was not allowed off the facility. Id. at 8. Stork claims that his work release and welding program were taken away even though he did not receive a writeup or a sanction and nothing was found. Id. at 3, 18–19, 25, 27, 29. Stork requested to return to RTEC, to view the picture on the body scanner, and to have his work release be reinstated, but his requests were denied. Id. at 26. Stork appealed the suspension or termination of his work release, and Kellie Wasko replied, informing Stork that "[t]he warden maintains authority to suspend or terminate an offender from work release or community programming for any reason. [She] will not reverse the warden's decision on this matter." Id. at 4.

Stork sues SD State Prison, Wasko, Unknown Nurse, Unknown COs, and Unknown OICs in their individual and official capacities. Doc. 1 at 2. Stork sues Ahrons and Ward in their official capacities.[2] Id. at 1.

---

[2] If a plaintiff does not specific the capacity in which he or she sues a defendant, the suit is treated as only including official capacity complaints. Egerdahl v. Hibbing Cmty. Coll., 72 F.3d 615, 619 (8th Cir. 1995); Nix v. Norman, 879 F.2d 429, 431 (8th Cir. 1989). Stork does not specify the

4

Stork requests money damages of $5,000,000 for each right that was violated. Id. at 8. He also requests money damages of $6,500 for every hour that he was in a dry cell, in handcuffs, and in belly chains. Id. Stork requests $1,000,000 for having his food passed through the same port that had his feces on it and $1,000,000 for having to drink out of a water cup that had his feces on it. Doc. 7 at 3. He also requests $2,000,000 for denying him the right to legal counsel and $5,000,000 for "making [him] eat like [he] was a dog." Id. He also requests to be compensated for the money he lost for removal of his work release and welding course. Id. Stork also requests that this Court order the COs and OICs to follow policies, be more professional at their jobs, and not violate inmates' civil rights. Doc. 1 at 8.

**B.     Legal Standard**

A court when screening under § 1915A must assume as true all facts well pleaded in the complaint. Est. of Rosenberg v. Crandell, 56 F.3d 35, 36 (8th Cir. 1995). Pro se and civil rights complaints must be liberally construed. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam); Bediako v. Stein Mart, Inc., 354 F.3d 835, 839 (8th Cir. 2004) (citation omitted). Even with this construction, "a *pro se* complaint must contain specific facts supporting its conclusions." Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985) (citation omitted); see also Ellis v. City of Minneapolis, 518 F. App'x 502, 504 (8th Cir. 2013) (per curiam) (citation omitted). Civil rights complaints cannot be merely conclusory. Davis v. Hall, 992 F.2d 151, 152 (8th Cir. 1993) (per curiam) (citation omitted); Parker v. Porter, 221 F. App'x 481, 482 (8th Cir. 2007) (per curiam) (citations omitted).

---

capacity in which he sues Ahrons and Ward. Doc. 1 at 1–2. Thus, he sues Ahrons and Ward in only their official capacities. See id.

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citation omitted). If a complaint does not contain these bare essentials, dismissal is appropriate. See Beavers v. Lockhart, 755 F.2d 657, 663 (8th Cir. 1985) (citation omitted). Twombly requires that a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true[.]" 550 U.S. at 555 (internal citation omitted); see also Abdullah v. Minnesota, 261 F. App'x 926, 927 (8th Cir. 2008) (noting that a complaint "must contain either direct or inferential allegations respecting all material elements necessary to sustain recovery under some viable legal theory" (citing Twombly, 550 U.S. at 553-63)). Further, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and that a recovery is very remote and unlikely." Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (internal quotation removed) (quoting Twombly, 550 U.S. at 556). Under 28 U.S.C. § 1915A, a court must screen prisoner complaints and dismiss them if they "(1) [are] frivolous, malicious, or fail[] to state a claim upon which relief may be granted; or (2) seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

### C. Stork's Causes of Actions

#### 1. Claims Against the SD State Prison

Stork alleges claims against the SD State Prison. See Doc. 1 at 1–2. The Eleventh Amendment bars suit against a state entity, as opposed to a state official, regardless of whether money damages or injunctive relief is sought. Cory v. White, 457 U.S. 85, 90–91 (1982). In determining whether an entity is entitled to Eleventh Amendment immunity, the court examines whether its powers were created by state law, the degree of its autonomy and control, and whether

6

the funds to pay awards from judgments against it come from the state treasury. Greenwood v. Ross, 778 F.2d 448, 453 (8th Cir. 1985). State prisons under the South Dakota Department of Corrections are arms of the State of South Dakota, and as such, are not subject to suit under § 1983. See SDCL § 1-15-1.2. Thus, Stork's claims against the SD State Prison are dismissed with prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(1)(b)(ii) and 1915A(b)(1).

### 2. Official Capacity Claims for Money Damages

Stork brings claims against defendants in their official capacities as employees of the South Dakota Department of Corrections and the MDSP. Doc. 1 at 2. As the Supreme Court has stated, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) (citing Brandon v. Holt, 469 U.S. 464, 471 (1985)). Such a suit is the equivalent of suing the State itself. While "[§] 1983 provides a federal forum to remedy many deprivations of civil liberties . . . it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." Id. at 66.

The Eleventh Amendment generally acts as a bar to suits against a state for money damages unless the state has waived its sovereign immunity. Id. Here, Stork seeks monetary damages. Doc. 1 at 8. Stork has effectively asserted a claim for money damages against the State of South Dakota. The State of South Dakota has not waived its sovereign immunity. Thus, Stork's claims against defendants in their official capacities for monetary damages are dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915A(b)(2).

### 3. Claims for Injunctive Relief

Stork requests injunctive relief against defendants. See Doc. 1 at 8. The Eighth Circuit held that an "inmate's claims for declaratory and injunctive relief are moot when he is transferred to another facility and is no longer subject to alleged unlawful conditions." Gladson v. Iowa Dep't of Corr., 551 F.3d 825, 835 (8th Cir. 2009) (citing Pratt v. Corr. Corp. of Am., 267 F. App'x 482, 482 (8th Cir. 2008) (per curiam)). See also Smith v. Hundley, 190 F.3d 852, 855 (8th Cir. 1999) (finding that an inmate's transfer to a new facility weeks before a trial for violation of his First Amendment rights mooted his claims for injunctive relief); Wycoff v. Brewer, 572 F.2d 1260, 1262 (8th Cir. 1978) (holding that a prisoner's claims for injunctive relief for violation of his Fourteenth Amendment rights were moot when plaintiff was transferred to a different penitentiary). Stork no longer resides at the Yankton Minimum Unit because he has been released on parole. See Offender Locator, S.D. Dep't of Corr., https://doc.sd.gov/adult/lookup/ (last visited May 20, 2024). Because Stork is no longer incarcerated, his claims for injunctive relief are moot and dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 4. Individual Capacity Claims for Money Damages

"Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009).

> Thus, each Government official . . . is only liable for his or her own misconduct. As we have held, a supervising officer can be liable for an inferior officer's constitutional violation only if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation.

Parrish v. Ball, 594 F.3d 993, 1001 (8th Cir. 2010) (cleaned up). That is, "a general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement

8

required to support liability" for an alleged constitutional violation. Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995).

### a.     Claim under 18 U.S.C. § 242

Stork alleges that defendants violated his constitutional rights under 18 U.S.C. § 242. Doc. 1 at 4. Section 242 makes it a criminal offense for any person under color of any law to willfully subject any person to a deprivation of constitutional rights. 18 U.S.C. § 242. Enforcement of § 242 "rests with the Attorney General and the Justice Department. No private right of action is provided[.]" Mousseaux v. U.S. Comm'r of Indian Affs., 806 F. Supp. 1433, 1437 (D.S.D. 1992); see also United States v. Wadena, 152 F.3d 831, 846 (8th Cir. 1998) ("Only the United States as prosecutor can bring a compliant under 18 U.S.C. § 241-242 . . . These statutes do not give rise to a civil action for damages." (omission in original) (quoting Cok v. Cosentino, 876 F.2d 1, 2 (1st Cir. 1989))). Because there is no private right of action under § 242, Stork's claims under § 242 are dismissed with prejudice for failure to state a claim under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(2).

### b.     Fifth Amendment Claims

#### (i)     Due Process

Stork alleges that defendants violated his Fifth Amendment due process rights. Doc. 1 at 6–7. The Fifth Amendment Due Process Clause only applies to the federal government; the Fourteenth Amendment Due Process clause applies to state governments. Truong v. Hassan, 829 F.3d 627, 631 n.4 (8th Cir. 2016). Stork only sues state agencies or employees of the State of South Dakota. Doc. 1 at 1–2. Thus, Stork's Fifth Amendment due process claim is dismissed with prejudice for failure to state a claim under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

9

### (ii) Right to Counsel

Stork alleges that defendants violated his rights under the Fifth Amendment because he was denied his request for counsel after he was read his Miranda rights. Doc. 1 at 6; Doc. 7 at 2. "[A] litigant cannot maintain an action under § 1983 based on a violation of the Miranda safeguards." Hannon v. Sanner, 441 F.3d 635, 636 (8th Cir. 2006). "Because 'the reading of Miranda warnings is a procedural safeguard rather than a right arising out of the Fifth Amendment itself, the remedy for a Miranda violation is the exclusion from evidence of any compelled self-incrimination, not a section 1983 action.' " Id. at 636–37 (cleaned up) (quoting Warren v. City of Lincoln, 864 F.2d 1436, 1442 (8th Cir. 1989) (en banc)). See also Lewis v. Holladay, 2015 WL 5462158, at *3 (E.D. Ark. Aug. 31, 2015) ("Plaintiff's claim that his constitutional rights were violated when he was questioned after he requested an attorney does not state a claim for relief under § 1983. Rather, such issues may be addressed in a criminal proceeding."), R&R adopted 2015 WL 5458294 (E.D. Ark. Sept. 17, 2015), aff'd, 670 F. App'x 904 (8th Cir. 2016) (per curiam). Thus, Stork's claim for violation of his right to counsel under the Fifth Amendment is dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### c. Eighth Amendment Claims

### (i) Deliberate Indifference to Conditions of Confinement

Stork claims that he was placed in a dry cell without food or drink for several days. Doc. 7 at 1. He also alleges that he was required to pass stool samples through his food port. Id. at 1, 21–22; Doc. 1 at 4. His food port was the same height as his water cup, which resulted in feces contamination to his water. Doc. 1 at 4; Doc. 7 at 12–13, 20–21, 24–25. Stork also claims that he was left in handcuffs and belly chains for the duration of his time at the MDSP. Doc. 1 at 4, 7; Doc. 7 at 1, 24, 27.

"[T]he Constitution 'does not mandate comfortable prisons'; it prohibits 'inhumane ones.'" Williams v. Delo, 49 F.3d 442, 445 (8th Cir. 1995) (quoting Farmer v. Brennan, 511 U.S. 825, 832 (1994)). The Supreme Court has clarified that only "extreme deprivations" that deny "the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." Hudson v. McMillian, 503 U.S. 1, 9 (1992) (internal quotation omitted). The Supreme Court has listed as basic human needs "food, clothing, shelter, medical care, and reasonable safety[.]" Helling v. McKinney, 509 U.S. 25, 32 (1993) (internal quotation omitted).

In order to prevail on an Eighth Amendment conditions of confinement claim, a prisoner must prove that (1) objectively, the deprivation was "sufficiently serious" to deprive him of "the minimal civilized measure of life's necessities" or to constitute "a substantial risk of serious harm" to his health or safety; and (2) subjectively, the defendants were deliberately indifferent to the risk of harm posed by the deprivation. Simmons v. Cook, 154 F.3d 805, 807 (8th Cir. 1998) (quoting Farmer, 511 U.S. at 834). An Eighth Amendment challenge to conditions of confinement requires examining the totality of the circumstances. Villanueva v. George, 659 F.2d 851, 854 (8th Cir. 1981) (en banc). Even if no single condition would be unconstitutional in itself, the cumulative effect of prison conditions may subject inmates to cruel and unusual punishment. See id.; see also Tyler v. Black, 865 F.2d 181, 183 (8th Cir. 1989) (en banc).

Stork claims that he was denied supper on June 19, 2023. Doc. 7 at 1. He claims that his food and water were contaminated by feces passed through a cell port. Id.; Doc. 1 at 4. He claims that he requested that officers clean or he be permitted to clean the food port to remove the feces, but his request was denied. Doc. 1 at 4. He also alleges that he got sick to his stomach with bad pains and diarrhea for three days because of the feces contamination. Id. He claims that he was

11

denied supper one night, and he also claims that he was denied water for an unspecified duration. Id. at 4, 7; Doc. 7 at 1, 24, 27. He also claims that he had to put his tray on the floor to eat because he was left in body chains. Id. at 5; Doc. 7 at 1, 10, 12, 16, 21–22. Although some conditions may not individually violate Stork's Eighth Amendment rights, he has collectively alleged sufficient facts to state a claim for deliberate indifference to his conditions of confinement in violation of his Eighth Amendment rights.

To allege a claim against a defendant in his or her individual capacity, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft, 556 U.S. at 676. Stork alleges individual involvement by Unknown Officers COs and Unknown Officers OICs. Thus, his Eighth Amendment deliberate indifference to conditions of confinement claims against Unknown Officers COs and Unknown Officers OICs in their individual capacities for money damages survive § 1915A screening.[3]

### (ii) Deliberate Indifference to Serious Medical Needs

Stork alleges a claim for deliberate indifference to his serious medical needs in violation of his Eighth Amendment right to be free from cruel and unusual punishment. Doc. 1 at 7. "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 104 (1976) (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)). "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Id. at 104–05 (footnotes omitted). "This conclusion does not

---

[3] Stork will have to identify "Unknown Officers COs" and "Unknown Officers OICs" in order to serve them. This Court bears no responsibility to figure out for Stork to whom Stork intends to refer or sue.

mean, however, that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Id. at 105. "[A] prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. at 106. Allegations of negligence will not suffice, nor will mere disagreement with treatment decisions. Jolly v. Knudsen, 205 F.3d 1094, 1096 (8th Cir. 2000) (citing Est. of Rosenberg, 56 F.3d at 37).

The deliberate indifference standard includes both an objective and subjective component. Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997) (citing Coleman v. Rahija, 114 F.3d 778, 784 (8th Cir. 1997)). The plaintiff "must demonstrate (1) that [he] suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs." Id. (citing Coleman, 114 F.3d at 784). "A serious medical need is 'one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.' " Coleman, 114 F.3d at 784 (quoting Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995)). To be liable for deliberately disregarding medical needs, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.

Here, Stork claims that he suffered from stomach pains and diarrhea for three days. Doc. 1 at 4. Many courts have held that stomach pains and diarrhea without more is not a serious medical need. See Mahamed v. Anderson, 2009 WL 873534, at *5 (D. Minn. Mar. 30, 2009) (collecting cases). Stork has not shown that his stomach pains and diarrhea amount to a serious medical need. See Docs. 1, 7.

13

Stork claims that Ward put gauze around his wrist to prevent the handcuffs from causing cuts and bruising. Doc. 1 at 7. Stork also claims that a nurse refused to help him with cuts and bruises caused by handcuffs. Id. "In some cases, cuts or lacerations are not severe enough to constitute serious medical needs, and whether stiches were required can be relevant to the analysis." Bailey v. Feltmann, 2014 WL 7185885, at *5 (E.D. Mo. Dec. 16, 2014) (collecting cases). Stork does not claim that the cuts were diagnosed by a medical professional or were so obvious that even a lay person would recognize a need for treatment. See generally Docs. 1, 7. Thus, Stork's Eighth Amendment claims for deliberate indifference to serious medical needs are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### (iii) Excessive Force

Stork also alleges an excessive force claim under the Eight Amendment[4] based on cuts and bruising around his wrists from the handcuffs. Doc. 1 at 7; Doc. 7 at 2. The Eighth Amendment protects prisoners from "unnecessary and wanton infliction of pain." Hudson v. McMillian, 503 U.S. 1, 5 (1992). In determining whether excessive force was used, the "core judicial inquiry . . . [is] whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (quoting Hudson, 503 U.S. at 7). To determine if force was reasonable and in good faith, courts may consider the need

---

[4] Stork also claims that the excessive force was a violation of his Fourteenth Amendment rights. See Doc. 1 at 7. Excessive force claims brought by prisoners are analyzed under the Eighth Amendment. Andrews v. Neer, 253 F.3d 1052, 1060–61 (8th Cir. 2001). Excessive force claims by pretrial detainees are brought under the Fourteenth Amendment. Kingsley v. Hendrickson, 576 U.S. 389, 400–01 (2015). Because Stork was a prisoner, not a pretrial detainee, when the alleged excessive force occurred, this Court will analyze his claim solely under the Eighth Amendment, as applied to the states through the Fourteenth Amendment and not separately under a Fourteenth Amendment analysis.

14

for applying force, the relationship between that need and the amount of force utilized, the threat the responsible officials reasonably perceived, any efforts used to diminish the severity of a forceful response, and the extent of the injury inflicted. Walker v. Bowersox, 526 F.3d 1186, 1188 (8th Cir. 2008) (per curiam). "[A] *de minimus* use of force or injury is insufficient to support a finding of a constitutional violation." Crumley v. City of St. Paul, 324 F.3d 1003, 1007 (8th Cir. 2003).

"[F]or the application of handcuffs to amount to excessive force there must be something beyond allegations of minor injuries." Id. at 1008. "Handcuffing inevitably involves some use of force, and it almost inevitably will result in some irritation, minor injury, or discomfort where the handcuffs are applied. To prove that the force applied was excessive in that context, therefore, a plaintiff must demonstrate something more." Chambers v. Pennycook, 641 F.3d 898, 907 (8th Cir. 2011) (internal citations and quotations omitted). The Eighth Circuit has held that a plaintiff's pain as a result of being handcuffed, without a more permanent injury, was not sufficient to support a claim of excessive force. Foster v. Metro. Airports Com., 914 F.2d 1076, 1082 (8th Cir. 1990).

Here, Stork claims that the handcuffs caused cuts and bruising around his arm. Doc. 1 at 7. Stork has not alleged that he experienced "something more" beyond minor injuries from the usage of handcuffs. See generally id.; Doc. 7. Thus, Stork's Eighth Amendment excessive force claims are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### d.     Ninth Amendment Claims

Stork alleges that defendants violated his Ninth Amendment rights. Doc. 1 at 6–7. The Ninth Amendment states that "[t]he enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." U.S. Const. amend. IX. "The Ninth

Amendment does not create substantive rights beyond those conferred by governing law." Gaslin v. Fassler, 377 F. App'x 579, 580 (8th Cir. 2010) (citing Martinez-Rivera v. Sanchez Ramos, 498 F.3d 3, 9 (1st Cir. 2007)). Thus, Stork's Ninth Amendment claim is dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### e. Fourteenth Amendment Claims

Construing Stork's complaint liberally, he also alleges a due process claim for termination of his work release. Doc. 7 at 3. "The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." Smith v. McKinney, 954 F.3d 1075, 1079 (8th Cir. 2020) (quoting Wilkinson v. Austin, 545 U.S. 209, 221 (2005)). "A liberty interest protectible under the due process clause of the fourteenth amendment 'may arise from two sources -- the Due Process Clause itself and the laws of the States.' " Mahfouz v. Lockhart, 826 F.2d 791, 792 (8th Cir. 1987) (per curiam) (quoting Hewitt v. Helms, 459 U.S. 460, 466 (1983)). "[T]here is no constitutionally based liberty interest in participating in a work release program, [but] a state may create such a liberty interest when its statutes or regulations place substantive limitations on the exercise of official discretion or are phrased in mandatory terms." Id. Stork does not identify a statute, and the South Dakota statute governing prison work release programs provides that "[t]he warden may, with or without cause, terminate or suspend any such release." SDCL § 24-8-1. Thus, Stork did not have a liberty interest in participating in his work release program. Stork's Fourteenth Amendment due process claim for termination from his work release program is dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

Stork's complaint also alleges Fourteenth Amendment claims for termination from his welding course. Doc. 7 at 3. The United States Court of Appeals for the Eighth Circuit has held that "[p]risoners have no constitutional right to educational or vocational opportunities during incarceration[.]" Wishon v. Gammon, 978 F.2d 446, 450 (8th Cir. 1992) (cleaned up) (citing Spencer v. Snell, 626 F. Supp. 1096, 1097 (E.D. Mo. 1986) aff'd 786 F.2d 1171 (8th Cir. 1986)). "[H]owever, if the state provides educational or vocational opportunities to its prisoners, it cannot deny equal access to such services to all prisoners absent a rational basis." Id. To show an equal protection violation, a plaintiff "must show that he is treated differently than a similarly situated class of inmates, that the different treatment burdens one of his fundamental rights, and that the different treatment bears no rational relation to any legitimate penal interest." Murphy v. Mo. Dep't of Corr., 372 F.3d 979, 984 (8th Cir. 2004) (citing Weiler v. Purkett, 137 F.3d 1047, 1051 (8th Cir. 1998) (en banc)). Here, Stork has not shown that he had a liberty interest in participating in the welding course, and he has not shown that he was treated differently than a similarly situated class of inmates. Thus, Stork's Fourteenth Amendment claims about his termination from the welding course are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

**II.     Motion to Subpoena**

Stork filed a motion to subpoena the MDSP dry cell policy and the video of his time in a dry cell in the MDSP North Harmon Hall from June 19, 2023, through June 23, 2023. Doc. 6 at 1. Stork's motion is premature. His complaint just now is being screened, he has yet to identify named defendants or to serve them, and of course the defendants have not answered or otherwise responded to the complaint. Stork's motion to subpoena, Doc. 6, is denied as premature.

## III. Conclusion

Accordingly, it is

ORDERED that Stork's claims against the SD State Prison are dismissed with prejudice under 28 U.S.C. §§ 1915(e)(1)(b)(ii) and 1915A(b)(1). It is further

ORDERED that Stork's claims against Defendants in their official capacities for monetary damages are dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915A(b)(2). It is further

ORDERED that Stork's claims for injunctive relief are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). It is further

ORDERED that Stork's claims under 18 U.S.C. § 242 are dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). It is further

ORDERED that Stork's Fifth Amendment due process claim is dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). It is further

ORDERED that Stork's claim for violation of his right to counsel under the Fifth Amendment is dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). It is further

ORDERED that Stork's Eighth Amendment conditions of confinement claim against Unknown Officers OICs and COs in their individual capacities for money damages survives § 1915A screening. Stork's remaining Eighth Amendment conditions of confinement claims are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). It is further

ORDERED that Stork's Eighth Amendment claims for deliberate indifference to serious medical needs are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). It is further

ORDERED that Stork's Eighth Amendment excessive force claims are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). It is further

ORDERED that Stork's Ninth Amendment claim is dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). It is further

ORDERED that Stork's Fourteenth Amendment claims are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). It is further

ORDERED that Stork's motion to subpoena, Doc. 6, is denied as premature. It is further

ORDERED that Stork shall identify and inform the Clerk of Court of the identities of Unknown Officers COs and Unknown Officers OICs. After Stork informs the Clerk of Court of the identities of Unknown Officers COs and Unknown Officers OICs, the Clerk of Court shall send blank summons forms and United States Marshals Service Forms (Form USM-285) to Stork so that he may complete the form to cause the complaint to be served upon the identified officers. It is further

ORDERED that Stork shall provide the Clerk of Court with the identity of the Unknown Officer COs and Unknown Officers OICs within thirty (30) days. It is further

ORDERED that upon receipt of the completed summons and USM-285 forms, the Clerk of Court will issue the summonses. If the completed summons and USM-285 forms are not submitted as directed, the complaint may be dismissed. It is further

ORDERED that the United States Marshals Service shall serve the completed summonses together with a copy of the complaint, Doc. 1; Stork's supplement containing additional allegations, Doc. 7; and this order upon the defendants. It is further

ORDERED that the defendants will serve and file an answer or responsive pleading to the amended complaints and supplements on or before 21 days following the date of service or 60 days if the defendant falls under Fed. R. Civ. P. 12(a)(2) or (3). It is finally

ORDERED that Stork will keep the court informed of his current address at all times. All parties are bound by the Federal Rules of Civil Procedure and by the Court's Civil Local Rules while this case is pending.

DATED May 23rd, 2024.

BY THE COURT:

_____
ROBERTO A. LANGE
CHIEF JUDGE

20